OPINION OF THE COURT
Wachtler, J.
Defendants were convicted, following a jury trial, of assault in the second degree and criminal possession of a weapon in the fourth degree. Their convictions were reversed and a new trial was ordered, the Appellate Division having concluded that the trial court erred in permitting the People to put a witness before the jury who had already indicated that he would refuse to testify. We now reverse and hold that, although the better practice would have been to avoid exposing the witness’s reticence to the jury, nevertheless under the circumstances of this case the trial court did not abuse its discretion in permitting the witness to be called.
The primary evidence against defendants came from the testimony of a police officer who happened upon the scene. He testified that, while on motor patrol, he observed three men striking another person who was lying on the ground. As the officer approached, the assailants fled in a car parked nearby. Following a brief chase, the assailants’ car stopped, and the driver and another ran off on foot. Defendant Lovacco was apprehended as he attempted to flee from the rear seat. A few minutes later, defendant Berg was arrested nearby by other officers and taken to the station house where he was positively identified as one of the assailants by the officer who had witnessed the incident. The assault victim, Ronald Iovino, was found not far from the scene of the assault, with his mouth taped and his hands bound behind him with handcuffs.
Although Iovino had been in court for much of the trial, he unexpectedly failed to appear on the day he was scheduled to testify. He was thereafter brought to court under a material witness order. At defense counsel’s request, the court interviewed Iovino in camera, to determine the reason for his apparent reluctance to testify. The court ascertained that Iovino had not been threatened or intimidated, but, nevertheless, appointed counsel to represent him. It is noteworthy that, during this interview, Iovino never indi *297 cated that he would refuse to testify; he merely expressed an inability to remember very much about the incident. Thereafter, during proceedings to determine whether Iovino should be held as a material witness, he gave the court every reason to believe that he intended to appear and testify the next day.
Prior to Iovino’s being called to the witness stand, defense counsel requested that the court first ascertain whether the witness intended to testify, expressing concern for the possibility of prejudice to defendants should the refusal to testify occur in front of the jury. An in camera meeting attended by the Trial Judge, the prosecutor and Iovino’s assigned counsel was then held. After being assured that Iovino was not suspected of any criminal activity in connection with the incident and that immunity would be granted if he invoked his Fifth Amendment privilege against self incrimination, Iovino’s attorney informed the court that his client would not testify. No reason was offered for this refusal.
Thereafter, defense counsel were informed that Iovino had indicated that he would not answer any questions, but that the court would nevertheless allow the People to call him as a witness. When Iovino took the witness stand, he refused to answer the question put to him by the prosecutor concerning his whereabouts at the time of the assault. Despite several directions by the court and admonitions regarding the consequences of his refusal, the witness steadfastly refused to answer. The jury was then excused, and having continued his refusal to respond, Iovino was held in contempt. Certain items of evidence, which had been admitted subject to this witness’s testimony, were then excluded. When the jury returned, the court admonished the jurors not to speculate as to the reasons for the exclusion of that evidence or the failure of Iovino to testify, or to consider those events in any way during their deliberations.
Defendants’ convictions were reversed by the Appellate Division, which concluded that the trial court erred in permitting the People to call Iovino as a witness once he had made clear that he would not testify. This refusal, it was believed, gave rise to the natural inference that Iovino *298 feared reprisal if he testified against defendants. There should be a reversal.
The decision to permit the People to call a witness who has already indicated that he or she will refuse to testify is one resting within the sound discretion of the trial court (United States v Vandetti, 623 F2d 1144, 1149; United States v Quinn, 543 F2d 640, 650; see People v Thomas, 51 NY2d 466, 472). Once a witness has communicated that intent, the trial court must determine whether any interest of the State in calling the witness outweighs the possible prejudice to defendant resulting from the unwarranted inferences that may be drawn by the jury from the witness’s refusal to testify. The trial court’s exercise of discretion is subject to review by this court only on the basis of whether that discretion was abused. Two bases for ascertaining whether reversible error has occurred have been advanced in the somewhat analogous context of a witness’s invocation of the Fifth Amendment privilege against self incrimination. The first focuses upon the prosecutor’s motive in calling the reticent witness, in an effort to determine whether the witness’s refusal to testify was deliberately demonstrated to the jury for the purpose of having it draw unwarranted inferences against the defendant. The second basis for finding error exists when it appears that the inferences from such a refusal to testify added critical weight to the prosecution’s case in a form not subject to cross-examination (Namet v United States, 373 US 179, 186-187; United States v Maloney, 262 F2d 535, 537).
We conclude that neither theory of reversible error has been demonstrated in the present case. An examination of the proceedings relative to the witness Iovino makes clear that the sole motive of the prosecutor in calling this witness was a good-faith effort to elicit his testimony; particularly where, as noted, the prosecutor offered to grant immunity to Iovino. The prosecutor was faced with a complaining witness who had been fully cooperative right up until the day he was to testify, and who even then merely expressed reservations about his ability to recall the incident but nevertheless assured the court that he would appear on the rescheduled date. Indeed, until just prior to the time Iovino was actually called as a witness, he *299 had never indicated that he would refuse to answer questions put to him. Under the circumstances, it was not unreasonable for the prosecutor to attempt to induce the witness to again change his mind about testifying by putting him before the jury and having him admonished regarding the court’s contempt power. Although the prosecutor was no doubt concerned over the unfavorable inference to be drawn against the People if he failed to produce the victim of the assault, it nevertheless does not appear that he intended, by putting Iovino before the jury to take advantage of the inference to be drawn by his refusal to testify. The case against defendants had been fully established by the testimony of other witnesses, one of whom had witnessed the assault. The prosecutor never commented upon nor in any way attempted to exploit the fact that Iovino had refused to testify (Rado v State of Connecticut, 607 F2d 572, 581). Clearly, the actions of the prosecutor do not support the conclusion that he was guilty of misconduct.
Moreover, any unfavorable inferences that the jury may have drawn from Iovino’s refusal to testify would have had little bearing upon the jury’s resolution of any direct issue raised on the trial. As noted, the People’s case was strong, and no factual issues or defenses were raised as to which the witness’s refusal to testify supplied the key or even provided corroboration (cf. People v Pollock, 21 NY2d 206; see Rado v State of Connecticut, supra, at p 582). It is urged that the only possible inference to be drawn from Iovino’s refusal to testify is that he did so out of fear or because he had been threatened, an inference that would, no doubt, result in unfair prejudice to defendants. We believe, however, that the court’s careful curative instruction to the effect that the jurors must refrain from speculation about Iovino’s reasons for refusing to testify and must not allow his conduct to enter into their deliberations, given to the jury immediately upon its return to the courtroom after the incident, was sufficient to dispel the formulation of such an unwarranted inference (United States v Maloney, supra, at p 538). The importance, as well as the effect, of curative instructions in such a case cannot be underestimated, as we depend, for the integrity of the jury system itself, upon *300 the willingness of jurors to follow the court’s instructions in such matters.
Thus, given the State’s strong interest both in attempting to induce this witness to testify and to avoid the unfavorable inference arising from a failure to produce the victim of the assault, coupled with the curative instruction concerning Iovino’s refusal to testify, it cannot be said that the trial court abused its discretion in allowing the People to call him as. a witness. We have examined defendants’ contentions concerning the sufficiency of the evidence and find them to be without merit.
Accordingly, the order of the Appellate Division should be reversed and the judgments of Supreme Court, Kings County, reinstated.