■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICHARD J. ROBERTS, Appellant.—Casey, J. Appeal from a judgment of the County Court of Albany County (Harris, J.), rendered May 18, 1984, upon a verdict convicting defendant of the crimes of robbery in the first degree and robbery in the second degree.

At about 2:00 A.M. on December 11, 1983, defendant and his companion, Randy Edington, approached a car that was parked near the footbridge in Washington Park in the City of Albany and in which one man was seated. Defendant and his companion entered the car and, after some conversation about marihuana, the man drove to Quail Street and then to the Albany Law School parking lot, arriving there about 2:45 A.M. after having stopped for "rolling papers" to "smoke a joint" and after the man had agreed to "an exchange of sexual favors". At this parking lot, defendant's companion put a knife to the man's throat and defendant asked him for money. Finding only a dollar in change in the man's pocket, the companion began punching the man, took a gold chain from his neck and after both had beaten him, drove to the Town of

Bethlehem, pulled the man from the car and left him there in a field. This incident occurred in a little more than an hour.

At about 4:50 A.M. of that morning, defendant was observed walking on Central Avenue in Albany by Police Officer James Turley. This officer had received a radio report of the robbery and noticed that defendant fit the description of one of the robbers. Turley recognized defendant because he had been present when defendant had been arrested on a prior occasion. Turley testified at the suppression hearing that he approached defendant, asked him his name and his previous whereabouts, requested defendant to accompany him to Albany Medical Center for a showup by the victim and that defendant willingly agreed. According to the officer, defendant was not in custody, was free to go and, therefore, was not given *Miranda* warnings. On the way to the hospital, the officer asked defendant where he had been earlier and defendant is said to have replied that he was with "a kid named Randy Edington", and to have described what Edington was wearing. At trial, however, seeking to establish an alibi, defendant testified that he was in a grill with his uncle, two girls, a couple of Edington's relatives and Edington. When defendant and the officer arrived at the hospital, defendant was taken to the stall in the emergency room where the victim was being treated and the victim immediately identified defendant as one of the robbers. It was only then, according to Turley, that defendant was placed under arrest and given *Miranda* warnings, but defendant gave no further statement.

On January 6, 1984, defendant was charged in a two-count indictment with robbery in the first degree and robbery in the second degree. A suppression hearing was held on March 9, 1984 and a *Sandoval* hearing was held immediately before the commencement of trial on April 23, 1984. After a three-day trial, defendant was found guilty as charged and was sentenced as a second felony offender to concurrent prison terms of 12½ to 25 years for robbery in the first degree and 7½ to 15 years for robbery in the second degree. Defendant's attack on the predicate felony conviction as the result of a coerced plea was overruled.

On this appeal, defendant further attacks as reversible error the manner in which his accomplice Edington was permitted to testify. Edington had previously been permitted to plead to a lesser charge of participating in the assault and robbery of the victim. Edington and his attorney, the Public Defender, initially indicated Edington's unwillingness to testify against defendant. Outside the presence of the jury, the court ruled

that Edington's prior plea had waived his right against self-incrimination and that Edington must testify. County Court informed Edington that his refusal would be considered a contempt of court, and that each refusal would subject him to 30 extra days in the Albany County Jail, and that the Parole Board would be notified that Edington should be required to serve the maximum of his sentence (7½ to 15 years) if Edington still refused to testify. It was then proposed that Edington would testify to his own involvement in the crimes, supplying the essential elements of the use of the knife and that he was an accomplice actually present, but that he would refuse to name or identify defendant and would state only that he and the other person were involved in the crimes. Defense counsel objected that such testimony would prejudice his client. County Court ruled that Edington's failure to identify defendant could not prejudice defendant and allowed Edington to testify for the prosecution. Each time Edington was asked to identify his companion and refused, he has held in contempt and the jury cautioned not to draw any inference against defendant from that determination. All motions made by counsel for defendant in regard to Edington's testimony were denied, including a motion to set aside the verdict against defendant.

The principal argument advanced on this appeal in regard to Edington is that County Court erred in allowing the jury to hear Edington's continual refusal to identify defendant and his being held in contempt for each refusal. In the fact pattern here, we find no reversible error. Defendant was identified positively as one of the robbers by the victim. It was also conclusively established that defendant had an accomplice. Since Edington was that accomplice, his testimony was relevant to the elements of the crime for which he was called to testify. His refusal to identify defendant was unwarranted in view of Edington's prior plea and the court cautioned the jury not to be influenced against defendant by the contempt it imposed on Edington. In view of the positive identification of defendant by the victim, it cannot be concluded that the manner in which Edington's testimony was received by the court was prejudicial to defendant. In the face of the overwhelming proof of defendant's guilt, if Edington had answered the inquiry as to the identity of his companion, it would have been to name defendant as the perpetrator. The failure of Edington to do so can, therefore, hardly be considered prejudicial to defendant.

Defendant further urges that the denial of his motion to

suppress certain statements made by him to Turley on the way to the hospital was error due to the officer's failure to have apprised him of his *Miranda* warnings, and that County Court also erred in denying his motion to suppress the victim's in-court identification of him. We find both of these contentions meritless. In regard to the first, defendant never did give an incriminating statement to the officer. The only statement given by defendant which adversely affected his interests was that he had been in the company of Randy Edington during the early morning hours of the date in question, while on trial defendant testified that he was with his uncle and two girls, as well as Randy Edington. We find that County Court's denial of the motion to suppress defendant's statements in this regard to be justified. The court obviously credited Turley's testimony that defendant voluntarily accompanied him to the hospital to be shown to the victim and, therefore, was not in custody at the time, and that the officer had the right to stop defendant on the street and to preliminarily question him since the officer had received by radio a description of the robber that "fit the defendant to a 'T' ".

As to the second contention, County Court properly found that the period of time the victim spent with defendant during the crime, over an hour, provided an independent basis for the victim's in-court identification of defendant as the robber, regardless of the manner in which the showup occurred *(see, People v Hill,* 83 AD2d 671).

With respect to the *Sandoval* hearing, on which it was ruled that defendant could be questioned about a prior felony conviction for attempted burglary in the second degree and a misdemeanor conviction for criminal trespass, again we find no error. The prior crimes were generically different than the crimes charged, were not too remote in time and indicated defendant's willingness to place his own self-interest above the rights of society. These prior convictions were properly ruled admissible on cross-examination of defendant *(see, People v Sandoval,* 34 NY2d 371).

Contrary to defendant's claim that his counsel was ineffective, we find that his attorney adequately protected defendant's rights and interests and that defendant received meaningful representation *(see, People v Baldi,* 54 NY2d 137). The chief claim in this regard is that defense counsel did not challenge the unconstitutionality of the predicate felony (attempted burglary in the second degree) at the time of his sentencing on the ground that defendant was innocent of the

prior crime. That conviction had been obtained by a plea before the same Judge who conducted defendant's trial. The record is clear that the Judge sent for and read the plea and sentencing minutes of the prior conviction before he sentenced defendant on the instant charge. Furthermore, defendant admitted this prior conviction when he testified.

By virtue of this prior felony and the facts and circumstances of the present conviction, we find no abuse of discretion in sentencing defendant to the maximum term of 12½ to 25 years on his first degree robbery conviction and 7½ to 15 years on the second degree robbery conviction, both sentences to run concurrently. The judgment of conviction should in all respects be affirmed.

Judgment affirmed. Kane, Casey and Weiss, JJ., concur.

Mahoney, P. J., and Levine, J., dissent and vote to reverse in a memorandum by Levine, J. Levine, J. (dissenting). In our view, reversal and a new trial are required because of prosecutorial misconduct, permitted by County Court, in repeatedly and persistently questioning codefendant Randy Edington on the witness stand concerning defendant's identity as the other perpetrator of the robbery. The prosecutor and the court were informed at a preliminary hearing in chambers that Edington would refuse to identify defendant as the person who participated in the crime with him, because of fear of reprisals by inmates during the term of imprisonment he was about to begin serving on his own conviction for the instant crimes. At this point, the entire focus of the case was directed at Edington's defiance, rather than at achieving a proper balance between the prosecution's need, if any, to call Edington as a witness and the prejudicial effect on the jury of Edington's unwillingness to name who was with him, under circumstances in which his knowledge of that fact was clear. The prejudicial effect of this scenario on an accused's right to a fair trial and that a curative instruction is unavailing to overcome it has been frequently recognized see, e.g., People v Pollock, 21 NY2d 206, 212-213; People v Sifford, 76 AD2d 937, 938; People v Paulino, 60 AD2d 769, 770; People v Zachery, 31 AD2d 732). The court threatened Edington with a sentence of 30 days in jail for contempt each time he refused to identify his accomplice and to recommend to the Parole Board that he serve his full, maximum sentence; but Edington remained adamant. The claims of prejudice advanced by defense counsel were summarily rejected. Thereupon, Edington was called to testify in the presence of the jury. He willingly responded to all of the prosecutor's initial questions, freely admitting that

he and another person had robbed and assaulted the victim and, describing their acts, corroborated fully the victim's testimony. Edington was also asked and answered questions that made clear to the jury that the identity of the other perpetrator was well known to him. Only then did the prosecution press for identification. All in the presence of the jury, Edington was asked, *no less than 10 times,* to name his accomplice, each time then being directed by the court to answer and being held in contempt upon his refusal to do so.

The spectacle of Edington's adamant uncooperativeness, even in the face of the severe sanctions the court repeatedly imposed, could have left the jury with no doubts that Edington was shielding his friend, defendant. Indeed, the very same inference was made here by County Court in denying defendant's motion for a mistrial upon the ground that defendant was not prejudiced by the foregoing procedures, since if Edington had been truthfully responsive to the questions, he would only have incriminated defendant.

The prosecution's professions of good faith and legitimate reasons to call Edington to the witness stand are incredulous, at best. First, it is claimed that Edington's testimony was necessary to prove the various elements of the robbery counts of the indictment. However, the victim's testimony fully established those elements. Moreover, the commission of the robberies in the degrees charged was never contested by the defense. As defense counsel's opening statement indicated, "Nobody doubts that [the victim] was robbed * * * The issue in this case is very simply one of identification." It was also argued that the prosecution was justified in calling Edington and asking him to identify defendant in order to ascertain whether he might have changed his mind about thus testifying upon reaching the witness stand. Apart from the unequivocal, firm refusal expressed by Edington at the conclusion of the preliminary hearing in chambers, even after being exposed to the full, coercive pressure of the court, this rationalization for calling Edington as a witness does not support the persistent questioning on the subject.

Finally, it is claimed that any error was not prejudicial, since the proof of guilt was "overwhelming". The People's evidence consisted of the victim's identification, defendant's driver's license found at the scene where the victim was abandoned and defendant's admission that he had been with Edington the night of the robbery. Defendant testified that he and Edington had indeed been together earlier that evening with several others, but later separated. This was supported

by defendant's alibi witness. There were significant discrepancies between the victim's description of his assailant given to the police and defendant's actual physical appearance. Although, certainly, the prosecution's proof was sufficient to support the verdict, if the jury had entertained doubts about the accuracy of the victim's courtroom identification of defendant, Edington's testimony that he and defendant remained together and committed the crime would have been critical in disproving defendant's alibi defense. This is the obvious explanation for the prosecution's tactics in calling him as a witness and using his persistent refusals to name the person who was with him as the means of planting with the jury the inference that he was protecting defendant. And this implication was injected in the case by the prosecutor without exposing Edington to cross-examination of his nontestimony.

In all of the foregoing respects, the instant case is entirely distinguishable from *People v Berg* (59 NY2d 294), principally relied upon by the prosecution to support its contention that permitting this stratagem was within County Court's discretion. In *Berg,* it was the victim and complaining witness himself who refused to testify. His reluctance was far more equivocal and the testimony sought was essentially collateral to the issues actually in dispute. Most importantly, in *Berg* there was not the persistent questioning on the same subject followed by repeated contempt citations, all in the presence of the jury, as occurred here. That the Court of Appeals did not intend to sanction the latter procedures by its decision in *Berg* is evident from the court's principal reliance *(id.,* p 298) on *United States v Vandetti* (623 F2d 1144). The court in *Vandetti,* however, condemned the very tactics employed by the prosecution here as per se grounds for reversal: "In the most extreme case, presentation of such a witness is obviously unfair, *as when there is extensive questioning after the prosecutor knew that the privilege would be asserted" (id.,* p 1147 [emphasis supplied]). The *Vandetti* decision further holds that, even when the trial court in its discretion finds a legitimate reason for the prosecution to call a recalcitrant witness to the stand, once "it is clear the witness is unwilling to testify, that fact is the only relevant testimony beyond identity the witness can give, and *continued questioning cannot be for the purpose of eliciting relevant testimony but only for the purpose of creating prejudice" (id.,* p 1150 [emphasis supplied]; *see also, United States v Mayes,* 512 F2d 637, 649-650, *cert denied* 422 US 1008).

Since the prosecution's use of the witness Edington deprived

defendant of both his constitutional rights to a fair trial and of confrontation, we would reverse and order a new trial.