Judgment, Supreme Court, Bronx County (Megan Tallmer, J.), rendered January 26, 2010, convicting defendant, after a jury trial, of manslaughter in the first degree, and sentencing him, as a second felony offender, to a term of 25 years, unanimously affirmed.
The evidence at trial established that defendant participated in the attack that resulted in the decedent’s death and the wounding of another victim. The other victim, Randolph Harrell, testified that he saw defendant swing a knife at the decedent in a “vicious” manner. Detectives followed a trail of blood from the crime scene to an apartment where defendant lived with his brother, the codefendant. They first encountered defendant in a hospital, where he had been treated for wounds, including cuts to his head, leg and hands. The detectives vouchered a hospital bag containing defendant’s blood-soaked shirt, jeans, and other clothing, and a forensic biologist from the Office of the Chief Medical Examiner (OCME) testified that blood samples taken from this clothing matched the DNA of both defendant and the decedent. Further, a physician at the OCME who conducted the autopsy of decedent testified that the decedent’s death was caused by stab wounds, as well as gunshot wounds, which were fatal either separately or in conjunction with each other. The physician also explained that, based on a photograph of one of defendant’s hands taken shortly after the subject incident, he had sustained a cut to the side of his index finger closer to the thumb. The physician testified that this injury was in “the classic location for a person holding a knife and then the knife sliding and cutting the finger.”
*568 Prior to summations, the court held a conference during which it sought to elicit from the People which counts they intended to submit to the jury. The court asked about the charge of fourth-degree criminal possession of a weapon, which, according to the indictment, related to the allegation that “the defendants, acting in concert with each other . . . did possess a knife with intent to use the same unlawfully against another.” The prosecutor responded, “Out.” The court asked defense counsel if he was “asking for [the charge]” and he responded, “Yes, I request it.” The court then stated that “I don’t think there is anything that would stop the People from dismissing that count, and I don’t believe it’s a lesser included of any existing count, counsel.” Addressing itself to defendant’s attorney, the court stated that “I don’t think the law prevents the People from dismissing it at this stage, counsel .... Again ... if you think the law is to the contrary, I’ll take a look at it. That’s my understanding, the People can dismiss it any time prior to the submission unless it could be supported as a lesser included offense of a charge, then it doesn’t get to be dismissed.”
Defendant argues on appeal that the court improperly deferred to the People’s desire to withdraw the fourth-degree possession charge, relying on People v Extale (18 NY3d 690 [2012]). In Extale, the defendant was indicted for, inter alia, first-degree assault and first-degree vehicular assault, in connection with his having intentionally driven a pickup truck into a police officer. Before the trial of those charges, the prosecutor announced the People’s intention to withdraw the vehicular assault count, and the court agreed with the prosecutor that the People had “the authority” to do so. The Court of Appeals disagreed, holding that “the issue was one for the trial court’s discretion, not the prosecutor’s” (18 NY3d at 695).
As a preliminary matter, we reject the People’s argument that defendant failed to preserve the Extale issue for appeal. By requesting that the weapons possession count be submitted to the jury immediately after the prosecutor requested that it be dismissed, defense counsel implicitly urged the court to exercise its discretion to submit the count to the jury. Defense counsel was not required to press the point after the court expressly agreed with the People’s position that they had the ultimate authority on whether the count would be submitted.
On the merits, we agree with defendant that the court’s position with respect to the count was no different from that of the trial court in Extale, which was found by the Court of Appeals to be erroneous. No fair reading of the trial record supports the People’s argument that the trial court exercised its discretion in *569 dismissing the charge. Indeed, its comment that “the People can dismiss [the count]” was equivalent to the Extale trial court’s comment that the prosecutor “ha[d] the authority” to dismiss the vehicular assault count (18 NY3d at 693). Nevertheless, we agree with the People that the court’s actions amounted to harmless error. In Extale, the Court of Appeals intimated that harmless error analysis applies to a trial court’s failure to exercise discretion in permitting withdrawal of a count of an indictment, by stating, “Nor can we be sure that the dismissal of the vehicular assault count did not affect the jury’s verdict” (id. at 696). There, the Court noted that the jury may have opted to convict on the vehicular assault charge, which would have benefitted the defendant because it, unlike the assault charge, is not classified as a violent felony.
Here, there is no reasonable possibility that the jury, had it been presented with the misdemeanor weapons possession charge, would have chosen to convict defendant on that count, instead of on the first-degree manslaughter charge. As detailed above, there was significant evidence tying defendant to the stabbing of the decedent, including a large amount of blood on defendant’s clothes. DNA from that blood matched defendant’s DNA and the decedent’s, and injuries to defendant’s hand were consistent with use of a knife. In light of this, there simply is no reasonable basis for concluding that the jury would have opted to forego convicting defendant on a manslaughter charge in favor of convicting him on a weapons possession charge which only alleged intent to use a knife, but not actual use of it.
Moreover, there is no evidence in the record linking the knife which forms the basis of the possession charge at issue to the decedent’s death. The detective who recovered that knife, across the street from the building lobby where the decedent was killed, testified that he could retrieve no fingerprint evidence from the knife. In addition, although he stated that he swabbed the knife for DNA, there was no testimony from the DNA expert or anyone else that defendant’s DNA was found on the knife. Finally, Harrell, having been shown the knife, could not identify it as the one used during the attack, and defendant’s counsel stated during the charge conference that he “[did not] see how the People could argue that was the knife.” Based on the foregoing, there was simply no basis for the jury to vote to convict on the weapons possession charge in lieu of the manslaughter charge, as some sort of compromise verdict. This contrasts with Extale, where, as the Court of Appeals found, the jury could quite reasonably have voted to convict the defendant of first-degree vehicular assault, as opposed to first-degree assault.
*570 We further find that the verdict comported with the weight of the evidence. The evidence outlined above amply demonstrated that defendant was directly involved in the stabbing of the decedent. While there were several inconsistencies between Harrell’s account of the incident before the grand jury and at trial, they do not provide a basis for disturbing the jury’s determination crediting his testimony (see People v Sanchez, 278 AD2d 174 [1st Dept 2000], lv denied 96 NY2d 834 [2001]). Indeed, the inconsistencies related to incidental matters such as whether the stabbing started shortly before the shooting or vice versa, and had no bearing on the question of defendant’s guilt. Likewise, Harrell’s oft-repeated response that he could not recall the answer to a question was not an impediment to the jury’s decision to convict, because those responses primarily went to his criminal past and the benefits he had been offered to testify, but not to the actual events that led to decedent’s death. The issue concerning Harrell’s initial reluctance to cooperate and the subsequent offer by the People to withdraw certain charges against him was thoroughly explored at trial and the jury was entitled to credit Harrell’s testimony notwithstanding it. Similarly, Harrell’s criminal history was also the subject of extensive cross-examination, and the jury’s weighing of his background and deciding to credit his testimony is entitled to deference (see People v Reyes, 17 AD3d 205 [1st Dept 2005], lv denied 5 NY3d 768 [2005]).
Defendant maintains that Harrell’s entire testimony should have been stricken because of his lack of credibility and volatile behavior on the witness stand. However, this argument is unpreserved and we decline to review it in the interests of justice, since counsel never made such a request. In any event, under the circumstances due process did not require the court to take the drastic measure of striking the entire testimony of the only testifying eyewitness. Defendant’s argument that he was denied the right to a fair trial because Harrell testified about what defendant characterizes as uncharged prior bad acts, is similarly unpreserved, and we decline to review it in the interests of justice. This argument also lacks merit. The testimony that defendant was “dusted” at the time of the accident cannot be said to have been prejudicial, since there is no basis to conclude that the jury understood this to be a drug reference, and since the court sustained a general objection to the testimony.
We similarly reject defendant’s position that his trial was corrupted by Harrell’s description of a threat allegedly made by the codefendant toward the decedent and an outburst Harrell *571 made on the witness stand immediately thereafter, apparently addressed towards the jury. Defendant only objected generally to the testimony about the threat, and did not join in the codefendant’s motion for a mistrial after Harrell allegedly made hostile statements to the jury. We likewise decline to review this unpreserved claim in the interest of justice. In any event, the court instructed the jury to disregard the testimony concerning a threat. Further, the court polled the jurors concerning that testimony and also about the outburst, and each juror responded that he or she could remain impartial.
Defendant’s argument that his right to a fair trial was also violated because of Harrell’s repeated invocation of the Fifth Amendment when asked about a material witness hearing at which he also engaged in several outbursts, is also unpreserved and we decline to review it in the interest of justice. Defense counsel was equivocal about whether Harrell was truly not entitled to exercise that right. In any event, Harrell properly invoked the Fifth Amendment because he had “reasonable cause to apprehend danger from a direct answer” to questions about his outbursts at the material witness hearing (Ohio v Reiner, 532 US 17, 21 [2001] [internal quotation marks omitted]). We also reject defendant’s claim that he should have been permitted to introduce evidence that the decedent had been suspected of murder and had written rap songs which boasted of violent acts, including homicide. The statements made by the prosecutor which such evidence would have been designed to counter were not intended to vouch for the decedent’s good character (see People v Ruine, 258 AD2d 278, 279 [1st Dept 1999], lv denied 93 NY2d 929 [1999]).
Finally, we perceive no basis for reducing the sentence.
Concur—Mazzarelli, J.E, Friedman, DeGrasse, Freedman and Kapnick, JJ.