People v Ward (2019 NY Slip Op 06419)





People v Ward


2019 NY Slip Op 06419


Decided on August 28, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 28, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
JOHN M. LEVENTHAL
BETSY BARROS
VALERIE BRATHWAITE NELSON, JJ.


2015-12019
 (Ind. No. 7307/13)

[*1]The People of the State of New York, respondent,
v
Tiequan Ward, appellant.


Paul Skip Laisure, New York, NY (Lauren R. Jones of counsel), for appellant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Leonard Joblove and Victor Barall of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Kings County (Vincent M. Del Giudice, J.), rendered November 12, 2015, convicting him of murder in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, as a matter of discretion in the interest of justice, and the matter is remitted to the Supreme Court, Kings County, for a new trial before a different Justice.
On August 19, 2010, at approximately 12:45 a.m., Steven Oliver was shot in the head while in a parking lot behind an apartment building in East New York. As a result of the shooting, Oliver died on August 21, 2010.
In September 2013, three years after the shooting, the defendant was arrested after the Federal Bureau of Investigation (hereinafter the FBI) turned over to the Kings County District Attorney's Office a video recording of a conversation between the defendant and a confidential FBI informant that occurred in July 2011. During his conversation with the confidential informant, the defendant admitted, inter alia, that he shot Oliver in retaliation for Oliver killing the defendant's friend "Tweety" in 2003.
Prior to trial, the defendant moved pursuant to CPL 710.30 to preclude the People from introducing into evidence his statements to the confidential informant on the ground that the People failed to timely serve the required notice of intention within 15 days after his arraignment. The People opposed the motion, and the Supreme Court denied the motion.
Also prior to trial, a purported witness to the shooting, Mercedes Mitchell, gave a sworn statement indicating that she observed the defendant shoot Oliver. Thereafter, however, Mitchell refused to cooperate with the District Attorney's Office and was eventually brought to court during the trial on a material witness warrant. At a material witness hearing, Mitchell's counsel indicated that if Mitchell were called to testify, she would invoke the Fifth Amendment privilege against self-incrimination because her proposed trial testimony could expose her to prosecution for perjury. Mitchell's counsel explained that, contrary to Mitchell's prior sworn statement, Mitchell [*2]would testify that she neither saw the defendant shoot Oliver, nor saw the defendant in the parking lot where the shooting occurred. Counsel stated that Mitchell would testify that her prior sworn statement and her photographic identification of the defendant were coerced by police officers. The Supreme Court ruled that Mitchell was not allowed to invoke the Fifth Amendment. The People requested that they be permitted to treat Mitchell as a hostile witness. However, upon Mitchell agreeing that she would testify and swearing that she would testify truthfully, the court ruled that it was premature to allow the prosecution to treat her as a hostile witness.
When called to the stand, Mitchell refused to take the oath. The Supreme Court held her in contempt (see Judiciary Law § 750[A]), but then permitted the prosecutor to pose questions to her as an unsworn witness. Mitchell responded to a few background questions, but once the prosecutor started posing leading questions relating to the incident, Mitchell invoked the Fifth Amendment privilege. After 12 assertions of the privilege, the prosecutor offered Mitchell immunity, but Mitchell continued to refuse to answer questions. The court held her in contempt multiple times.
The jury convicted the defendant of murder in the second degree. On appeal, the defendant contends that the Supreme Court erred in denying his motion to preclude his statements made to the confidential informant, and that he was deprived of a fair trial due to the prosecutor's improper questioning of Mitchell before the jury, the prosecutor's arguments on summation regarding Mitchell's refusal to testify, and the court's jury instructions as they pertained to Mitchell's testimony and her invocation of the Fifth Amendment privilege.
CPL 710.30(1) provides, in pertinent part: "Whenever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20, . . . they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." "The obvious purpose of the statute is to afford a defendant adequate time in preparing his [or her] case in respect to the voluntariness of a confession or admission" (People v Greer, 42 NY2d 170, 178; see People v Ross, 21 NY2d 258, 262; see also People v Lopez, 84 NY2d 425, 428). However, a notice of intention to offer evidence need not be served upon the defendant where, as here, there is no question of voluntariness (see People v Greer, 42 NY2d at 178; see also People v Smith, 118 AD3d 920, 921; People v Cox, 215 AD2d 684, 684-685; People v Clark, 198 AD2d 46, 46). The defendant made admissions during a conversation with a confidential informant, with whom he was friendly, and his admissions were made in a noncoercive, noncustodial setting (see People v Carter, 31 AD3d 1056, 1057; People v Roopchand, 107 AD2d 35, 37, affd 65 NY2d 837). The defendant's claim that he was motivated to lie to the confidential informant so that the informant would allow the defendant to participate in a robbery did not render the defendant's statements involuntary, since he was not induced to lie by anything the informant said or did (see Colorado v Connelly, 479 US 157, 165-166; People v Burkett, 98 AD3d 746, 747). Accordingly, we agree with the Supreme Court's determination to deny the defendant's motion to preclude admission of his statements to the confidential informant.
However, we find that the cumulative effect of the Supreme Court's erroneous rulings and jury instructions relating to Mitchell's refusal to take the oath and invocation of the Fifth Amendment privilege, as well as the prosecutor's exploitation of Mitchell's refusal to take the oath and invocation of the Fifth Amendment privilege, deprived the defendant of a fair trial. Although these errors are not preserved for appellate review, we nevertheless reach them in the exercise of our interest of justice jurisdiction (see CPL 470.15[3]; People v Engstrom, 86 AD3d 580, 581; People v Rose, 223 AD2d 607, 607).
All proceedings of a judicial character connected with a criminal trial are governed by the requirement that every witness over the age of nine years may testify only under oath, unless he or she suffers from a mental disease or defect which renders him or her unable to understand the nature of the oath (see CPL 60.20[2]; People v Copeland, 70 AD2d 884, 884). The requirement serves two purposes: "to alert the witness to the moral duty to testify truthfully and to deter false testimony through the sanction of a perjury prosecution" (People v Copeland, 70 AD2d at 884). [*3]Since Mitchell refused to take the oath, and was not deemed to be ineligible to take the oath by reason of, inter alia, infancy, mental disease, or defect pursuant to CPL 60.20(2), the Supreme Court erred in allowing Mitchell to testify or be questioned by counsel. The court further erred in giving the jury a charge regarding the corroboration of an unsworn witness (see CJI2d[NY] Corroboration of a Witness: Unsworn Witness; see also People v Groff, 71 NY2d 101), which permits a jury, under certain conditions, to convict a defendant upon unsworn testimony of a person deemed ineligible to take an oath.
Despite the Supreme Court's erroneous ruling allowing Mitchell to testify and have questions posed to her, it should be noted that Mitchell did not, in fact, provide unsworn testimony other than giving background information about herself. When asked about the incident, she invoked the Fifth Amendment privilege, and, to the extent that the defendant was prejudiced, it was not due to the substance of anything that Mitchell said on the witness stand. Rather, the prejudice to the defendant arose from (1) the prosecutor's posing of leading questions which informed the jury that Mitchell, a person familiar with both the defendant and the victim, had previously identified the defendant as the shooter, (2) the inferences that the prosecutor sought to draw from Mitchell's refusal to testify, and (3) the court's jury instructions that the jury may draw an inference of the defendant's guilt from Mitchell's refusal to testify.
After Mitchell refused to take the oath and invoked her Fifth Amendment privilege, the Supreme Court suggested to the prosecutor that she may ask Mitchell about her prior sworn statement identifying the defendant as the shooter. Following the court's advice, the prosecutor then asked Mitchell whether she recalled speaking with the police on August 19, 2010, whether she recalled giving a recorded statement to the District Attorney's Office on August 26, 2010, and most significantly, whether she "told the police that she saw NuNu [the defendant] shoot Stout [Oliver]." Mitchell invoked the Fifth Amendment privilege with respect to the first two questions, and the court sustained an objection to the last of those questions. In sustaining the objection, the court instructed Mitchell not to answer. Even so, the prosecutor's question itself brought to the jury's attention inadmissible and prejudicial matter, i.e., that Mitchell was sufficiently familiar with the defendant and the victim such that she knew their respective nicknames, and that Mitchell told law enforcement officials that the defendant shot the victim (see People v Arce, 42 NY2d 179, 189; People v Stanard, 32 NY2d 143, 148; People v Ramos, 139 AD2d 775, 776). The court failed to give the jury any curative instruction to dispel any prejudice to the defendant arising from that question. Given Mitchell's refusal to testify, it was impossible for the defendant to dispel the prejudice on cross-examination (see People v Vargas, 86 NY2d 215, 221; see also Namet v United States, 373 US 179, 186-187).
During her summation, the prosecutor again improperly capitalized on Mitchell's refusal to testify and her invocation of the Fifth Amendment privilege by arguing that the jury should infer that Mitchell, and others, refused to testify only to avoid making an in-court identification of the defendant as the shooter (see People v Vargas, 86 NY2d at 217; People v Beaman, 122 AD2d 848, 849; cf. People v Berg, 59 NY2d 294, 299).
"Where, as here, a witness asserts [her] Fifth Amendment privilege in the presence of the jury, the effect of the powerful but improper inference of what the witness might have said absent the claim of privilege can neither be quantified nor tested by cross-examination, imperiling the defendant's right to a fair trial" (People v Vargas, 86 NY2d at 221). "[A] witness's invocation of the Fifth Amendment privilege may amount to reversible error in two instances: one, when the prosecution attempts to build its case on inferences drawn from the witness's assertion of the privilege, and two, when the inferences unfairly prejudice defendant by adding critical weight' to the prosecution's case in a form not subject to cross-examination" (id., quoting Namet v United States, 373 US at 187; see People v Berg, 59 NY2d at 298; People v Alston, 71 AD3d 684, 685). "[T]he framework for courts to evaluate a challenge by a defendant regarding the prosecution's handling of the testimony of a witness who pleads the Fifth Amendment at trial . . . entails a determination of whether the probative value of the testimony of the witness who invoked the Fifth Amendment privilege in the presence of the jury outweighs any prejudice to the defendant" (People v Vargas, 86 NY2d at 221-222). "Important considerations that factor into this analysis include the [*4]prosecutor's conduct and intent in calling the witness, the number of questions asked, their significance to the State's case, whether the prosecutor draws any inference in closing arguments from the witness's assertion of the privilege and refusal to answer, the witness's relationship to defendant, and the jury instructions" (id. at 222; see People v Berg, 59 NY2d at 298).
Here, the probative value of Mitchell's unsworn testimony regarding her background information was greatly outweighed by the prejudice to the defendant by reason of Mitchell's invocation of the Fifth Amendment privilege in the presence of the jury. The record amply demonstrates that the prosecutor exploited Mitchell's assertion of the privilege and refusal to answer by asking leading questions and asking the jury, in summation, to draw inferences from Mitchell's assertion of the privilege and refusal to answer.
Finally, the prejudice to the defendant was further compounded when the Supreme Court improperly instructed the jury that it could take into consideration Mitchell's refusal to answer questions, since, although she had a right to refuse to answer questions that might incriminate her, she did not have that right in this case once she was granted immunity from prosecution. The court's instruction erroneously suggested that the jury may draw an unwarranted inference against the defendant (see People v Anderson, 123 AD2d 770, 776; cf. People v Foster, 164 AD2d 894, 895), and ignored the fact that Mitchell was not given immunity until after she had asserted the Fifth Amendment privilege 12 times.
Accordingly, we conclude that the defendant was deprived of his right to a fair trial. "The right to a fair trial is self-standing and proof of guilt, however overwhelming, can never be permitted to negate this right" (People v Crimmins, 36 NY2d 230, 238).
During sentencing, the Supreme Court Justice stated the following: "Sir, you're a murderer, all right. You lie, you cheat, you do everything you can to get over on society. . . . Notwithstanding your nefarious membership in an organization, all right, it's clear to this Court that not only are you guilty beyond all doubt, not beyond a reasonable doubt but beyond a shadow of a doubt. . . . You are just trying to guild the lilly [sic], if you understand what that means, all right. You're guilty. There is no question about it. . . . [Y]our whole life you never, you've never done anything worthwhile in your entire life, only been a scourge on society . . . . You're a scourge, a real scourge on society. . . . You should be excised from the body politic and be incarcerated for as long as possible." Because of these intemperate remarks, we remit the matter to the Supreme Court, Kings County, for a new trial before a different Justice.
In light of our determination, we need not reach the defendant's remaining contentions.
BARROS and BRATHWAITE NELSON, JJ., concur.
LEVENTHAL, J., concurs in the result, and votes to reverse the judgment and remit the matter to the Supreme Court, Kings County, for a new trial before a different Justice, with the following memorandum:
I agree with the result reached by my colleagues in the majority. I write separately to express my view that reversal of the judgment is warranted on the additional ground that the defendant was deprived of the effective assistance of counsel under the New York State Constitution.
"A defendant in a criminal case has a constitutional right to the effective assistance of counsel" (People v Larkins, 10 AD3d 694, 694; see US Const 6th Amend; NY Const, art I, § 6). "However, what constitutes effective assistance is not and cannot be fixed with precision, but varies according to the particular circumstances of each case" (People v Rivera, 71 NY2d 705, 708). Under the New York State Constitution, "[s]o long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation, the constitutional requirement will have been met" (People v Baldi, 54 NY2d 137, 147; see People v Benevento, 91 NY2d 708, 712). The focus of the New York standard is on "the fairness of the process as a whole" (People v Benevento, 91 NY2d at 714). To [*5]prevail on a claim of ineffective assistance of counsel, it is incumbent on the defendant to demonstrate "the absence of strategic or other legitimate explanations" for counsel's allegedly deficient conduct (People v Rivera, 71 NY2d at 709).
Here, defense counsel made no objection to the Supreme Court's ruling to allow Mercedes Mitchell to testify without having taken the oath. Counsel objected to only one question the prosecutor asked Mitchell, and, although counsel objected to the prosecutor's question asking, "And, on August 19th of 2010, you told the police that you saw NuNu shoot Stout. Is that correct?" counsel did not seek any further relief, such as a curative instruction, when the court sustained counsel's objection. Similarly, counsel failed to seek relief when, in the jury's presence, Mitchell repeatedly invoked the Fifth Amendment privilege against self-incrimination. Later, counsel did not object when the prosecutor, on summation, made comments to the effect that Mitchell, and other witnesses, would not talk because of the "code of the streets." Likewise, counsel failed to lodge any objection to the jury charge even though the court erroneously charged the jury, among other things, regarding the corroboration of an unsworn witness.
I believe that there is no legitimate explanation for defense counsel's failure to object to the numerous errors relating to Mitchell's testimony, the prosecutor's summation comments, and the Supreme Court's jury charge, and that counsel's failings deprived the defendant of meaningful representation. Had counsel voiced appropriate objections at the proper time, the court would have been presented with the opportunity to correct the errors, and this Court would be presented with questions of law for appellate review. Under the circumstances of this particular case, the defendant was deprived of the effective assistance of counsel under the New York State Constitution (see NY Const, art I, § 6; People v Baldi, 54 NY2d 137).
RIVERA, J.P., dissents, and votes to affirm the judgment, with the following memorandum:
Respectfully, I would affirm the judgment of conviction in its entirety.
As acknowledged by my colleagues in the majority, the defendant failed to preserve for appellate review the challenges he now raises regarding Mercedes Mitchell's purported testimony, as he failed to register appropriate objections thereto (see CPL 470.05[2]; People v Hines, 159 AD3d 832, 833; People v Silvestre, 118 AD3d 567, 571). In contrast to the majority, I would decline to reach them in the exercise of this Court's interest of justice jurisdiction (see CPL 470.15[3][c]; [6][a]). "Reversals . . . made as a matter of discretion in the interest of justice . . . basically are utilized where an error or errors occurred which, although not preserved as a matter of law, nevertheless resulted in an unfair trial" (Peter Preiser, Practice Commentary, McKinney's Cons Laws of NY, CPL 470.15). After careful examination of the record, I discern no basis for exercising interest of justice jurisdiction herein.
In any event, I strongly disagree with the proposition that any of the alleged errors deprived the defendant of a fair trial so as to warrant a reversal of the judgment of conviction. While Mitchell should not have been permitted to proceed as an unsworn witness (see CPL 60.20[2]), Mitchell, in effect, gave no testimony whatsoever. After responding to questions relating to her pedigree, Mitchell mostly refused to respond or invoked the Fifth Amendment privilege against self-incrimination. Even when defense counsel saw fit to cross-examine Mitchell, Mitchell gave no responses.
Moreover, Mitchell's invocation of the Fifth Amendment privilege was not critical to the prosecution's case (cf. People v Vargas, 86 NY2d 215, 221 [the People questioned a witness knowing the witness would respond by invoking the Fifth Amendment]). " Absent a conscious and flagrant attempt by the prosecutor to build a case out of the inferences arising from the use of the testimonial privilege or without some indication that the witness's refusal to testify adds critical weight to the People's case in a form not subject to cross-examination, reversal is not warranted'" (People v Alston, 71 AD3d 684, 685, quoting People v Jones, 138 AD2d 405, 406). Here, there was no indication that the People's motive for calling Mitchell was solely to raise inferences of the defendant's guilt based on the invocation of the privilege (see People v Berry, 27 NY3d 10, 16).
I further differ from the majority's determination that the prosecutor "exploited" Mitchell's invocation of the privilege (majority op at 4; cf. People v Vargas, 86 NY2d at 222 [the Court of Appeals found that the prosecutor's "numerous" references in her summation to a witness's assertion of the Fifth Amendment privilege resulted in an impermissible inference that the witness refused to answer in order to avoid identifying the defendant as the murderer]). Contrary to the defendant's contention, Mitchell's purported testimony did not suggest that she would have identified the defendant as the shooter. The prosecutor asked certain questions as to whether Mitchell had spoken to the police on August 19, 2010, and August 26, 2010. The prosecutor also asked if Mitchell had given a recorded statement to the District Attorney's Office on August 26, 2010. Mitchell refused to answer any of those questions "on the grounds that [she] may incriminate" herself. The prosecutor then asked one question that briefly touched upon the subject murder, by asking, "on August 19, 2010, you told the police that you saw [the defendant] shoot [the victim]. Is that correct?" The defendant objected, and the Supreme Court sustained the objection and instructed Mitchell, "That means don't answer." After Mitchell was granted immunity, she still did not respond to any of the questions posed to her by the prosecutor. Thereafter, defense counsel himself chose to ask Mitchell whether the police had "threaten[ed] or coerce[d]" her into making a statement on August 26, 2010, to which no response was provided by Mitchell.
During summation, defense counsel focused on the fact that none of the witnesses stated "I saw what happened, and pointed a finger" at the defendant. Counsel also specifically commented on Mitchell's "refus[al] to say anything about the case."
In response thereto, the prosecutor essentially made two comments. First, the prosecutor stated that Mitchell "didn't say anything. Because, ladies and gentlemen, when you're on the streets, you don't cooperate with law enforcement. You don't talk to the cops." Second, the prosecutor remarked, "Mitchell was at the scene that night, and when she came in here she didn't say a thing," adding, "if the victim's own brother won't come to court, why would . . . Mitchell talk? There's a variety of reasons that people don't cooperate with law enforcement, but it is the code of the streets. So, just because you don't have one of those many people who were out there that night coming in and pointing him out doesn't mean that he didn't do it."
"[B]earing in mind that modern juries are not bereft of educated and intelligent persons who can be expected to apply their ordinary judgment and practical experience" (Havas v Victory Paper Stock Co., 49 NY2d 381, 386; see People v Santi, 3 NY3d 234, 246-247), I find it difficult to fathom that these remarks by the prosecutor, in response to the defense's summation, deprived the defendant of a fair trial. The jury had before it strong evidence of the defendant's guilt, which included a taped statement the defendant made to an informant, wherein the defendant admitted that he shot the victim. In light of the strength of the People's case, the summation comments by the prosecutor, the defendant's challenge to which is unpreserved, did not infringe upon or deprive the defendant of the right to a fair trial.
The defendant's remaining contentions, to the extent the record permits appellate review, are without merit.
ENTER:
Aprilanne Agostino
Clerk of the Court